Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

_AUGUST 13_ 20_14_

WILLIAM M. McCOOL, Clerk

By_____ Deputy

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 14 244 RSM |
| Plaintiff, | No. |
| v. | INDICTMENT |
| REZA DINDAR, a/k/a "Renda Dindar," | |
| Defendant. | |

## COUNT 1
### (Conspiracy)

**A. The Iran Trade Embargo & International Emergency Economic Powers Act.**

The International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701-1707, authorized the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States, when the President declares a national emergency with respect to that threat. Under IEEPA, the president can declare a national emergency through Executive Orders that have the full force and effect of law.

INDICTMENT/DINDAR - 1

On March 15, 1995, the President issued Executive Order 12957, finding that the actions and policies of the Government of Iran constituted an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States and declaring "a national emergency to deal with that threat." Executive Orders 12959 and 13059 (hereinafter collectively, along with Executive Order No. 12957, the "Executive Orders") imposed economic sanctions, including a trade embargo, on Iran. The Executive Orders prohibited, among other things, the unauthorized exportation, re-exportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States. The Executive Orders were in effect at all times material to this Indictment.

Pursuant to the Executive Orders, the United States Treasury Secretary promulgated the Iranian Transactions and Sanctions Regulations, Tile 31, Code of Federal Regulations, Part 560, implementing the sanctions imposed by the Executive Orders. Section 560.203 of the Iranian Transactions and Sanctions Regulations prohibits any transaction within the United States that evades or avoids, attempts to evade or avoid, or has the purpose of evading or avoiding the Iranian Transactions and Sanctions Regulations. Section 560.204 prohibits the unauthorized exportation, re-exportation, sale, or supply, directly or indirectly, from the United States of any goods, technology, or services to Iran or the Government of Iran; as well as the exportation or supply of goods, technology, or services to persons in third countries knowing or with reason to know that the goods, technology or services are intended for supply, trans-shipment, or re-exportation to Iran.

The U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") administers the authorization and issuance of licenses for any exports subject to the Iranian Transactions and Sanctions Regulations. Pursuant to the Iranian Transactions and Sanctions Regulations, all persons and entities are required to file an application for a license with, and receive approval from, OFAC to export, or attempt to export, any goods or technology from the United States to Iran. In the absence of a

INDICTMENT/DINDAR - 2

license, or other prior approval, it is illegal under IEEPA and the Iranian Transactions and Sanctions Regulations to export products or services to Iran without a license, or to export the products or services to a third country if the export is intended or destined for Iran. At no time did the defendant, REZA DINDAR, or any agent or representative of the defendant, apply for, receive, or possess a license or authorization from OFAC to export goods, technology, or services, of any kind, to Iran.

**B. The Department of Commerce and the Export Administration Regulations.**

Pursuant to its authority derived from IEEPA, the Department of Commerce reviews and controls the export of certain goods and technology from the United States to foreign countries. For this purpose, the Department of Commerce promulgates the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations, Parts 730-774. Through the EAR, the Department of Commerce imposes license or other requirements before items subject to the EAR can be lawfully exported from the United States or lawfully re-exported from another country. These controlled items are listed on the Commerce Control List ("CCL"), published at Title 15, Code of Federal Regulations, Part 774, Supp. No. 1. The Department of Commerce has determined that the items on the CCL could make significant contributions to the military potential or nuclear proliferation of other nations, or could be detrimental to the foreign policy or national security of the United States. For example, the EAR controls exports and re-exports of "dual-use items," that is, commercial items that also have a military or nuclear proliferation application for foreign countries.

On August 17, 2001, under the authority of IEEPA, the President issued Executive Order 13222, which declared a national emergency with respect to the unrestricted access of foreign parties to certain United States goods and technologies. The President has issued annual Executive Notices extending the national emergency declared in Executive Order 13222 from the period covered by that Executive Order through the time of this Indictment. *See* 78 Fed. Reg. 49,107 (Aug. 12, 2013).

INDICTMENT/DINDAR - 3

At all times material to this Indictment, the Military Sonar System, Part Number S3160-06, was controlled on the CCL under Export Control Classification Number ("ECCN") 6A991. The Department of Commerce controls items under ECCN 6A991 for anti-terrorism reasons. Under IEEPA and the EAR, it is a crime to, among other things, willfully export, conspire to export, attempt to export, or cause the export from the United States to Iran of a Military Sonar System, Part Number S31600-06, without a license or authorization from OFAC or the Department of Commerce. At no time did the defendant, REZA DINDAR, or any agent or representative of the defendant, apply for, receive, or possess a license or authorization from OFAC or the Department of Commerce to export goods, technology, or services, of any kind, to Iran.

**C. Export and Shipping Records.**

Pursuant to United States laws and regulations, exporters and shippers or freight forwarders are required to file certain Electronic Export Information ("EEI") concerning exports of goods and technology from the United States. EEI is required to be filed electronically through the Automated Export System ("AES") jointly administered by the United States Department of Homeland Security, the Bureau of Customs and Border Protection, and the United States Bureau of Census.

An essential and material part of the EEI filed via AES, as well as other export filings, is information concerning the end-user and ultimate destination of the export. The identity of the end-user may determine whether the goods (a) may be exported without any specific authorization from the United States government; (b) may be exported only with the specific authorization or validated license from a department or agency of the United States government, such as the Department of Commerce or the Department of the Treasury, OFAC; or (c) may not be exported from the United States.

The EEI filed via AES is equivalent to an official statement to the United States government that the transaction at issue occurred as described therein. EEI filed via AES is used by the United States Department of Commerce, Bureau of Industry and Security,

INDICTMENT/DINDAR - 4

for export control purposes, and by the United States Bureau of Census to collect trade statistics.

**D. The Conspiracy.**

Beginning in or about 2010, and continuing through August 13, 2014, within the Western District of Washington, and elsewhere, REZA DINDAR, and other persons known and unknown to the grand jury, did knowingly and willfully conspire, combine, confederate and agree to defraud the United States government, including the Department of the Treasury and the Department of Commerce, by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the export and supply of goods from the United States to Iran without authorization or a license, by deceit, craft, trickery, and dishonest means; and to commit the following offenses against the United States:

knowingly and wilfully exporting goods from the United States to Iran, without first obtaining the required licenses and authorizations from the Office of Foreign Assets Control, United States Department of the Treasury, in violation of Title 50, United States Code, Sections 1702 and 1705, and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204;

fraudulently and knowingly exporting and sending from the United States merchandise, articles, and objects contrary to a law and regulation of the United States, and receiving, concealing, buying, and facilitating the transportation and concealment of merchandise, articles, and objects, knowing the same to be intended for exportation from the United States contrary to a law and regulation of the United States, in violation of Title 18, United States Code, Section 554;

knowingly transmitting and transferring funds from a place outside of the United States to a place in the United States, with the intent to promote the carrying on of specified unlawful activity, in violation of Tile 18, United States Code, Section 1956(a)(2)(A); and

knowingly and willfully falsifying, concealing, and covering-up material facts by trick, scheme, and device, making false, fictitious and fraudulent statements and representations as to a material fact, and making and using a false writing and document knowing the same to contain false, fictitious

INDICTMENT/DINDAR - 5

and fraudulent entries, in a matter within the jurisdiction of the United States Department of the Treasury, the United States Department of Commerce, and the United States Bureau of Census, by creating and filing false and fictitious shipping documents, including Electronic Export Information filed via the Automated Export System.

**E. Manner and Means of the Conspiracy.**

It was part of the conspiracy that REZA DINDAR, through New Port Sourcing Solutions ("NPSS"), a business he managed in Xi'an, China, procured United States goods, technology, and commodities on behalf of multiple entities located in Iran.

It was further part of the conspiracy that REZA DINDAR and other employees at NPSS attempted to conceal that NPSS was procuring goods, technology, and commodities for entities located in Iran by causing false information to be conveyed to manufacturers and suppliers in the United States, specifically, that the end-user and country of ultimate destination for the items was located in China, when in fact the items were intended to be exported to Iran.

It was further part of the conspiracy that REZA DINDAR and other employees at NPSS attempted to conceal that NPSS was procuring goods, technology, and commodities for entities located in Iran by causing the items to be shipped from the United States directly to China, and then surreptitiously trans-shipped from China to the ultimate end-user in Iran.

It was further part of the conspiracy that REZA DINDAR and other employees at NPSS caused the creation and filing of false Electronic Export Information via the Automated Export System, which misrepresented and concealed the true identity and location of the ultimate end-user and country of destination for the items being exported, and misrepresented the fact that no license was required to export the items.

It was further part of the conspiracy that REZA DINDAR and other employees at NPSS caused funds to be transmitted into the United States to finance the purchase of the goods, technology, and commodities that were exported to Iran.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**F. Overt Acts in Furtherance of the Conspiracy**

During and in furtherance of the conspiracy, within the Western District of Washington and elsewhere, one or more of the conspirators committed one or more of the following overt acts, among others:

1. On or about December 28, 2011, REZA DINDAR and NPSS received an order request from an entity in Iran ("the Iranian customer") to procure a Military Sonar System, Part Number S3160-06, from a manufacturer located in the Western District of Washington ("the manufacturer").

2. On or about December 29, 2011, an NPSS employee sent an email to the Iranian customer and REZA DINDAR stating that NPSS provided the manufacturer with false ("virtual") end-user information because the Military Sonar System, Part Number S3160-06, was a "sensitive . . . military part[]."

3. Between December 29, 2011, and August 2012, REZA DINDAR caused other NPSS employees to convey to the manufacturer false information that the ultimate end-user and country of destination for the Military Sonar System was located in China, when in fact the item was intended to be exported to Iran.

4. On or about August 15, 2012, REZA DINDAR and other NPSS employees caused a wire transfer of $34,600 to be sent from China to the manufacturer as a down payment for three Military Sonar Systems, Part Number S3160-06.

5. On or about September 13, 2012, REZA DINDAR and other NPSS employees caused the filing of Electronic Export Information related to the export of one Military Sonar System, Part Number S3160-06, which falsely stated that the ultimate end-user of the item was located in China; the country of ultimate destination was China; and that no license was required for the export.

6. On or about September 14, 2012, REZA DINDAR and other NPSS employees caused the export of one Military Sonar System, Part Number S3160-06, from the United States to Iran, via China.

7. On or about September 16, 2012, REZA DINDAR sent an email to an NPSS employee directing her to ship the Military Sonar System, Part Number S3160-06, to a specific end-user in Tehran, Iran, after the item arrived in China.

INDICTMENT/DINDAR - 7

8. On or about September 17, 2012, the NPSS employee sent an email to REZA DINDAR confirming that the Military Sonar System, Part Number S3160-06, would be shipped to the end-user in Tehran, Iran, as previously directed by REZA DINDAR.

9. On or about November 23, 2012, REZA DINDAR and other NPSS employees caused a wire transfer of $63,000 to be sent from China to the manufacturer as the final payment for three Military Sonar Systems, Part Number S3160-06.

10. On or about November 26, 2012, REZA DINDAR and other NPSS employees caused the filing of Electronic Export Information related to the export of two Military Sonar Systems, Part Number S3160-06, which falsely stated that the ultimate end-user of the items was located in China; the country of ultimate destination was China; and that no license was required for the export.

11. On or about November 28, 2012, REZA DINDAR and other NPSS employees caused the export of two Military Sonar Systems, Part Number S3160-06, from the United States to Iran, via China.

12. During in or about 2011 and 2012, REZA DINDAR sent and received numerous emails discussing the embargo and sanctions against Iran, which he often referred to as the "Iranian sanction situation" or the "sanctions problem." For example, on March 11, 2012, REZA DINDAR sent an email to an NPSS manager outlining four surreptitious methods of facilitating the payment for goods that were being exported to Iran in order to subvert the "Iranian sanction situation."

All in violation of Title 18, United States Code, 371.

## COUNT 2
### (*Export to an Embargoed Country*)

On or about September 14, 2012, at SeaTac, within the Western District of Washington, REZA DINDAR did knowingly and wilfully export and cause to be exported goods, namely, one Military Sonar System, Part Number S3160-06, from the United States to Iran, without first obtaining the required licenses and authorizations from the Office of Foreign Assets Control, United States Department of the Treasury, in violation of the embargo imposed upon Iran by the United States government.

INDICTMENT/DINDAR - 8

All in violation of Title 50, United States Code, Sections 1702 and 1705; Title 31, Code of Federal Regulations, Parts 560.203 and 560.204; and Title 18, United States Code, Section 2.

## COUNT 3
### (*Export to an Embargoed Country*)

On or about November 28, 2012, at SeaTac, within the Western District of Washington, REZA DINDAR did knowingly and wilfully export and cause to be exported goods, namely, two Military Sonar Systems, Part Number S3160-06, from the United States to Iran, without first obtaining the required licenses and authorizations from the Office of Foreign Assets Control, United States Department of the Treasury, in violation of the embargo imposed upon Iran by the United States government.

All in violation of Title 50, United States Code, Sections 1702 and 1705; Title 31, Code of Federal Regulations, Parts 560.203 and 560.204; and Title 18, United States Code, Section 2.

## COUNT 4
### (*Smuggling Goods from the United States*)

On or about September 14, 2012, at SeaTac, within the Western District of Washington, REZA DINDAR did knowingly and fraudulently export and send, and cause to be exported and sent, from the United States, merchandise, articles, and objects, namely, one Military Sonar System, Part Number S3160-06, contrary to the laws and regulations of the United States, specifically, Title 50, United States Code, Sections 1702 and 1705; Title 31, Code of Federal Regulations, Parts 560.203 and 560.204; and Title 18, United States Code, Section 1001.

All in violation of Title 18, United States Code, Sections 554 and 2.

//
//
//
//

INDICTMENT/DINDAR - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNT 5
### (*Smuggling Goods from the United States*)

On or about November 28, 2012, at SeaTac, within the Western District of Washington, REZA DINDAR did knowingly and fraudulently export and send, and cause to be exported and sent, from the United States, merchandise, articles, and objects, namely, two Military Sonar Systems, Part Number S3160-06, contrary to the laws and regulations of the United States, specifically, Title 50, United States Code, Sections 1702 and 1705; Title 31, Code of Federal Regulations, Parts 560.203 and 560.204; and Title 18, United States Code, Section 1001.

All in violation of Title 18, United States Code, Sections 554 and 2.

## COUNT 6
### (*Money Laundering*)

On or about August 15, 2012, at Seattle, within the Western District of Washington, REZA DINDAR knowingly transmitted and transferred funds, and caused the transmission and transfer of funds, that is $34,600, from a place outside of the United States (China) to a place in the United States (Seattle, Washington), with the intent to promote the carrying on of specified unlawful activity, namely, Exporting Goods to an Embargoed Country, in violation of Title 50, United States Code, Sections 1702 and 1705, and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204; and Smuggling Goods from the United States, in violation of Title 18, United States Code, Section 554.

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNT 7
### (*Money Laundering*)

On or about November 23, 2012, at Seattle, within the Western District of Washington, REZA DINDAR knowingly transmitted and transferred funds, and caused the transmission and transfer of funds, that is $63,000, from a place outside of the United States (China) to a place in the United States (Seattle, Washington), with the intent to promote the carrying on of specified unlawful activity, namely, Exporting Goods to an

INDICTMENT/DINDAR - 10

Embargoed Country, in violation of Title 50, United States Code, Sections 1702 and 1705, and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204; and Smuggling Goods from the United States, in violation of Title 18, United States Code, Section 554.

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNT 8
### (*Filing False Export Records*)

On or about September 13, 2012, at SeaTac, within the Western District of Washington, REZA DINDAR, in a matter within the jurisdiction of the United States Department of the Treasury, the United States Department of Commerce, and the United States Bureau of Census, did knowingly and willfully cause material facts to be falsified, concealed, and covered up by trick, scheme, and device; cause to be made false, fictitious and fraudulent statements and representations as to a material fact; and caused to be made and used a false writing and document knowing the same to contain false, fictitious and fraudulent entries; all by causing the creation and filing of false and fictitious shipping and export documents, including Electronic Export Information filed via the Automated Export System which stated that no license was required and that the ultimate consignee, end-user, and country of destination were located in China, when REZA DINDAR then and there knew that these statements were false, in that the ultimate destination for the items was Iran and thus a license was required for the export and shipment.

All in violation of Title 18, United States Code, Sections 1001(a)(1)-(3) and 2.

## COUNT 9
### (*Filing False Export Records*)

On or about November 26, 2012, at SeaTac, within the Western District of Washington, REZA DINDAR, in a matter within the jurisdiction of the United States Department of the Treasury, the United States Department of Commerce, and the United States Bureau of Census, did knowingly and willfully cause material facts to be falsified, concealed, and covered up by trick, scheme, and device; cause to be made false, fictitious

INDICTMENT/DINDAR - 11

and fraudulent statements and representations as to a material fact; and caused to be made and used a false writing and document knowing the same to contain false, fictitious and fraudulent entries; all by causing the creation and filing of false and fictitious shipping and export documents, including Electronic Export Information filed via the Automated Export System, which stated that no license was required and that the ultimate consignee, end-user, and country of destination were located in China, when REZA DINDAR then and there knew that these statements were false, in that the ultimate destination for the items was Iran and thus a license was required for the export and shipment.

All in violation of Title 18, United States Code, Sections 1001(a)(1)-(3) and 2.

A TRUE BILL:

DATED:

*Signature of foreperson redacted pursuant to the policy of the Judicial Conference of the United States*

_____

FOREPERSON

_____

JENNY A. DURKAN
United States Attorney

_____

TODD GREENBERG
Assistant United States Attorney

INDICTMENT/DINDAR - 12